# EXHIBIT 2



EXHIBIT

1

7-15-05 WD

MSC, Inc.
File No.: 03-1134

## TRANSCRIBED STATEMENT OF CARLOS AGUIAR

This is Russell DuBois of Marine Safety Consultants, Inc. on October 6, 2003, in Fairhaven, MA in our offices.

Q.    I'll need you to identify yourself for the statement, please.
A.    My name is Carlos A. Aguiar.  I'm a fisherman on the F/V MY WAY.

Q.    Is that AGUIAR?
A.    Correct.

Q.    Are you 18 Bourne Street, New Bedford, MA?
A.    Correct.

Q.    Date of birth ███████
A.    Correct.

Q.    Social Security ███████
A.    Correct.

Q.    We have your permission to record this, correct?
A.    Yes.

Q.    And you're here with your wife?
A.    Yes.

Q.    And your fourteen month old daughter?
A.    Yes.

Q.    How long have you been with the F/V MY WAY?
A.    More than two years.

Q.    It's a dragger?
A.    It's a dragger.

Q.    Do you have experience in commercial fishing before that?
A.    Yes.  I been fishing since 1976.

AGUIAR, CARLOS                              2
File No.: 03-1134

Q.    All in dragging operations?
A.    Some scallop, some draggers.  Last time, last year was on a dragger.

Q.    How many crewmembers are on the F/V MY WAY?
A.    Five.

Q.    Do you have a specific position?
A.    I'm a cook.

Q.    Can you just tell me who the captain and crew are?
A.    The captain, his name is John Cura, the engineer is Joe Lima.  Joaquim Machado, and Jose Abreu.  Is the mate.  And myself.  Carl Aguiar.

Q.    Mr. Cura and Mr. Lima both own it?  They're the owners?
A.    Yeah.  Mr. Cura is the captain.

Q.    Could you describe to me when you left and what the circumstances were?
A.    We left on a Thursday.  Went out fishing on a Thursday, the weather was good.  We out fishing.

Q.    Was it just this past Thursday?
A.    Yes.  And so we stayed and we fished that day.  Friday and Saturday morning.  Around 10 o'clock.  10:30.  Something like that.  When they were haul back, I was trying to put the chain on the door, the chain is hefty and the door slipped down back to the water   And that's when I had caught, with my finger in the chain.  I set the chain.

Q.    Okay, so your right ring finger, right first finger?
A.    Yes.

Q.    The right first finger got caught in the safety chain?
A.    Yes.  Safety chain the door.  The one you hold on to the door.  So the door slipped down to the water and it got caught.

Q.    So the chain quickly became fully taut and extended and that's when your finger got caught in it?
A.    No.  I put the chain over the door so I could put the safety on.  When I was starting to put the safety on, on the door, that's when the door went down again and it cut my finger.

Q.    Okay, so the chain cut the finger?
A.    No.

Q.    Oh, the door did?
A.    The safety, the hook that goes inside the chain - the safety.

AGUIAR, CARLOS                    3
File No.: 03-1134

Q.    Oh, I see, it's called the safety.
A.    The safety. It's like a knot. That's where it got caught. When the door went down.

Q.    That door is something that you have to use and all the safety and the chain - these are all
      things you have to use multiple times per trip, right?
A.    Yeah. We have to use that all the time, when the door comes up, we have to put the safety
      chain so it won't hurt nobody. That's we tried to put the chain over the door, to hook up, so
      the door won't go anywhere.

Q.    Right.
A.    And that day, that moment, it's one guy runs the winch, the other one puts that chain on the
      door. So the other guy runs on the winch, that was not his fault. I was trying to put the
      chain on the door. That's my job, to put the chain on the door. That's when the door went
      down here.

Q.    So was there any reason that you know of why the door slipped down?
A.    No. We don't know. It happens. It's not very common, but it happens. When the boat is
      hang up on the bottom, something like that, when you're hauling back, it happens. I been
      doing that job for many times and never having it happens, you know? It was that day.
      Happen.

Q.    Was there a lot of rough sea? Was there a rough sea?
A.    No, no, was a good weather, when we come back.

Q.    So you said it wasn't related to the guy running the winch? There was no problem with
      him?
A.    No, no, no. There was no problem with him. It happens.

Q.    Who was that running the winch?
A.    Joe Lima.

Q.    Who else was up at the time?
A.    Uh, there was Joe Machado.

Q.    So the three of you guys?
A.    Yeah. And the captain in the wheelhouse.

Q.    Oh, okay. One guy sleeps?
A.    Yeah.

Q.    Who do you think witnessed it? Was the guy at the guy watching it when it happened?
A.    Everybody watched. The captain -

AGUIAR, CARLOS                          4
File No.: 03-1134


Q.    Everybody saw it?

A.    The captain, the guys who runs on the winch. I think that's all of them see it when the door slip out.


Q.    Yeah. And so you immediately, you felt pain, you passed out or anything?

A.    No, I didn't pass out, so, I went inside, took my glove off, when I see was a deep gash on my finger, when I tried to clean it up but that's when I see the bone. And the captain, like two band aids around so I can close the gash and then we call the Coast Guard. We explain everything to him. And the Coast Guard come to the boat and take me to the Rhode Island hospital.


Q.    You mentioned that you left on Thursday?

A.    Yes.


Q.    Did this occur on Friday or Saturday morning?

A.    Saturday morning.


Q.    Did you stay overnight in Rhode Island Hospital?

A.    No. I came home.


Q.    You came home Saturday?

A.    Yeah. Saturday afternoon.


Q.    So somebody operated on you?

A.    Yes.

W.    They had to fix the bone, inside, to take all of this, that I witnessed. They had to fix the bone because infection was very bad.


Q.    So you had a fracture?

A.    Yes.

W.    Yes. The fracture was the bone, this part, that's right here. Between here's.

A.    Wasn't break like this.

W.    The bone broke. From the side to side. So this part went up, this part went down, so it was pretty bad, so they cleared it right there in the emergency room, one of those special rooms they have. And they kept, they open and they tried to put that breakage, the breakage right, they try to put the breakage -

A.    On each side.

W.    There. To fix it so it was going to heal the right way.


Q.    Put it back in place?

W.    Yes. And they was successful doing that. I think we have to go to the operating room, actually the operating room, because if there wasn't, because the fracture was so bad,

AGUIAR, CARLOS                            5
File No.: 03-1134

because they were afraid they could not put it together at one time.  They have to use another surgery.  But, they took x-rays.  They saw that they did a good job so he didn't have to go to a second man.  It was a real operating room, okay?  And they put a big splint to hold it, to hold the bone in place, so he heals and they told him about four weeks.  But he has to be seen by a doctor.  As a matter of fact, have to call for an appointment for this Wednesday.

Q.      Okay.
W.      It's a follow up, it's very important that he see the hand doctor.

Q.      The same surgeon?
W.      The same, or whatever team he work with.  Whoever, you know, who ever doctor follows up.

Q.      Back to Providence?
W.      Yes.  They'd rather have people go back.
A.      The doctor, what operated on me, he says for me to see me to see my doctor, Dr. Sawyer, in New Bedford.

Q.      Okay.  Dr. Sawyer?
A.      Dr. Sawyer.
W.      It's done with him, only because he's on Comadine.  He has to be followed up by the family doctor.

Q.      Yeah, right.  Right.  Who's the doctor in Rhode Island that you were treated by?
W.      The doctor who operated on him was Dr. Jennifer Reed.

Q.      At this time, it seems that it was set back into place pretty well?
W.      Yes.
A.      Yeah, that's what he says.
W.      They x-ray after the procedure and that's what they said.  That's what the x-ray showed, that they did, they were successful in putting the bone together as far as they're concerned.  They don't mean in the future, that's, you know, that's the way it stays.  That's the way they explained it to me.  But if you call the doctor, they explain it better.

Q.      Have you ever had an injury on a fishing boat before?
A.      No.

Q.      And how about to your hand?  Have you ever had a problem with your right hand?
A.      I had a head injury on the top of my head once, but I went to the insurance.

Q.      But that had nothing to do with your hands or your fingers?
A.      No, no, no.

AGUIAR, CARLOS                        6
File No.: 03-1134

Q.    Everything was fine?
A.    Yeah.

Q.    Just to summarize, again, the injury and the circumstances surrounding your injury - was
      there anything that we did not talk about that may have contributed to the injury as far as
      maybe the door and the chain and the equipment wasn't working properly?
A.    The equipment was working properly all the time. This - it happens, once in a while, it
      happens. The door slipped down. It's nothing we can do. When I put the chain.

Q.    One person does it all the time, right? It's not like -
A.    It's two persons, one on the winch, and one on the door.

Q.    But not two people on the door?
A.    No.

Q.    One person can do it?
A.    Yeah.

Q.    There was no slip? You didn't slip, your feet didn't slip or anything like that?
A.    No, no, no. That's - when I tried to put the chain on the door, that's when the door went
      down, I was trying to put the safety hook on the door. One time I was trying the safety on
      the door, that's when the door went down, that's when it got caught.

Q.    Do you have anything further to add to your statement? Anything that you would like to
      add?
A.    No, that's what happened. That's what happened, I can't anything else more. That's what
      happened.

Q.    Once, again, just confirm that we had your permission to record this, right?
A.    Yes, you had my permission.

Q.    Let's have you state your name again to end the recording.
A.    My name is Carlos Aguiar.

Q.    Okay, thank you.
A.    Thank you.

**EXHIBIT 3**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CARLOS A. AGUIAR, | ) | |
| Plaintiff | ) | |
| VS. | ) | Civil Action |
| | ) | No. 04-12011-MLW |
| LIMA & CURA FISHING | ) | |
| CORPORATION, | ) | |
| Defendant | ) | |

## PLAINTIFF'S ANSWERS TO INTERROGATORIES
## PROPOUNDED BY THE DEFENDANT

Q1.    Please state your full name, date of birth, occupation, present address and residential addresses for the past five years, including the dates between which you resided at each such address.

A.1.    Carlos A. Aguiar,
DOB: 3/16/58,
18 Bourne Street,
New Bedford, MA 02740
Disabled

Q2.    Please state in full and complete detail your experience with boats and boating at the time of the alleged incident, listing each occasion prior to your employment on the defendant's vessel when you acted as a seaman on board a vessel engaged in fishing operations, including the date and location of each vessel, the name and address of each vessel's owner, the size of the crew on each vessel, a description of your duties on each occasion, whether or not you made any prior claims for injuries sustained aboard any vessel and whether or not you were acting in full capacity as employee on each such occasion.

A.2.    Plaintiff has been fishing since 1976.   Plaintiff's fishing experience in the United States was scalloping and dragging as a deckhand/cook.   Plaintiff fished 10 years in Portugal long lining.

At time of accident, Plaintiff was a deckhand/ cook on the F/V MY WAY which is owned by Lima & Cura Fishing Corporation.

2003    Boat Majestic
114 Mcarthur Drive
New Bedford, MA
F/V MAJESTIC

Cook
$4,619.97

Boat Lucimar
114 Mcarthur Drive
New Bedford, MA
F/V LUCIMAR
Cook
$3,082.06

F/V MY WAY
114 McArthur Drive
New Bedford, MA 02740
Cook
$12,370.53

2002    F.A.T. Fishing Corp.
F/V MAYFLOWER
c/o 84 Front Street
New Bedford, MA 02740
Cook
$3,638.18

Boat My Way
F/V MY WAY
114 McArthur Drive
New Bedford, MA 02740
Cook
$30,742.85

2001    Galcicia Fishing Corp.
F/V GALCICIA
c/o 84 Front Street
New Bedford, MA 02740
Cook
$12,074.40

F.A.T. Fishing Corp.
F/V MAYFLOWER
c/o 84 Front Street
New Bedford, MA
Cook
$7,165.34

Blanca Casa Fishing Corp.
F/V VIRGINIA SANDS

113 McArthur Drive
New Bedford, MA 02740
Cook
$2,507.51

Boat Sea Escape
F/V SEA ESCAPE
114 McArthur Drive
New Bedford, MA 02740
Cook
$16,482.26

2000    Boat Sea Escape
114 McArthur Drive
New Bedford, MA 02740
Mate
$9,734.63

Boat Orion
Cook
$6,635.76

OMF Fishing Corp.
2 Middle Street
P.O. Box 127
Fairhaven, MA 02719
Cook
$4,674.12

Braga Fisheries, Inc.
F/V SUNSHINE
c/o 84 Front Street
New Bedford, MA
Cook
$1,574.12

1999    OMF Fishing Inc.
2 Middle Street
P.O. Box 127
Fairhaven, MA
Cook
$8,625.59

Boat Virginia Sands
114 McArthur Drive

New Bedford, MA 02740
Cook
$3,428.32

C & B Fishing Corp.
F/V SANDCOR
Cook
$24,364.77

Braga Fisheries, Inc.
F/V SUNSHINE
c/o 84 Front Street
New Bedford, MA
Cook
$2,659.96

In regards to prior claims, see answer to Interrogatory #24.

Q3.   Please state as to the F/V MY WAY:

    a.    the date and port you joined the crew;
    b.    capacities in which you served aboard;
    c.    your total earnings on the vessel, including bonuses;
    d.    whether you were paid your earned wages in full;
    e.    if your answer to subsection (d) of this interrogatory is negative, state the wages paid you up to the time you left the vessel;
    f.    if you claim that any weekend wages are due, state the amounts and dates between which these wages were accrued.

A.3.   a.    2002
    b.    Deckhand/ Cook;
    c.    $30,742.85
    d.    was paid in full

Q4.   Please state as to the incident alleged in your complaint the exact location at sea of the vessel at the time of the alleged incident, whether the vessel was pounding or rolling as a result of sea conditions at the time and location of the alleged occurrence, and the weather conditions at the time and place of the incident, setting forth details of light, precipitation, temperature and prevailing winds.

A.4.   Vessel at 41-39 North 68-35 West, wind SW 20 knots, seas 2-3 feet, accident occurred at approximately 10-11:00 am and it was a normal calm day for weather

Q5.   Describe in full and complete detail when and how the incident occurred, stating what you saw, what you did, what you heard and what happened in the order in which the

4

events took place, including everything you did in an attempt to avoid the alleged incident.

A.5.    Plaintiff was hooking up port door of port net. Door came up to gallast frame and stopped. Plaintiff took safety chain and threaded it through triangle on door and was in process of hooking it up on gallast frame. At that point the door came up and then immediately dropped into the water pulling the safety chain and crushing his finger.

Plaintiff did not have sufficient time to do anything to avoid the accident.

Q6.    Please state each and every fact upon which you rely in alleging in paragraph 16 of Count I of your complaint that "The personal injuries sustained by the Plaintiff, CARLOS A. AGUIAR, were due to no fault of his, but were caused by the Unseaworthiness of the F/V MY WAY."

A.6.    Plaintiff claims that either the winch operator negligently dropped the door in its operation of the winch or that if the winch operator did not operate the winch and/or move the controls and drop the door than the winch and/or brake malfunctioned causing the door to slip creating an unseaworthy condition.

Q7.    Please state each and every fact upon which you rely in alleging in paragraph 20 of Count II of your complaint that "The personal injuries sustained by the Plaintiff, CARLOS A. AGUIAR, were due to no fault of his, but were caused by the Unseaworthiness of the F/V MY WAY."

A.7.    See answer to Interrogatory #6.

Q8.    Please state each and every fact upon which you rely in alleging in paragraph 21 of Count I of your complaint that "As a result of said injuries, the Plaintiff, CARLOS A. AGUIAR has suffered pain of body and anguish of mind, lost time from his usual work and pursuits, incurred medical expenses, and has sustained other damages as will be shown at trial."

A.8.    See answer to Interrogatories #5 and 21.

Q9.    Please state each and every fact upon which you rely in alleging in paragraph 28 of Count IV of your complaint that "The Defendant, LIMA & CURA FISHING CORPORATION, has negligently, willfully, arbitrarily, and/or unreasonable failed to provide the Plaintiff with maintenance and cure in a timely and adequate manner."

A.9.    Defendant had failed to pay maintenance for Plaintiff at a rate based on his daily expenses of the following:

$110.00 weekly for rent
$10.00 weekly for electricity

$10.00 weekly for heat
$20.00 a day for food and necessities

Also, see Department of Housing Poverty guidelines.

Q10.  Please state each and every fact upon which you rely in alleging in paragraph 29 of Count IV of your complaint that "As a result of the Defendant's failure to provide the Plaintiff maintenance and cure, the Plaintiff sustained and will continue to sustain damages, including without limitation, pain of body and anguish of mind, lost time from his usual work and pursuits, medical and hospital expenses, attorneys fees, and has sustained and will sustain other damages as will be shown at trial."

A.10.  See answer to Interrogatory #9, 21.

Q11.  Please state in full and complete detail in what other respects you alleged the defendant was negligent.

A.11.  See answer to Interrogatory #6.

Q12.  If you claim that the negligence of any other person contributed to the cause of your injury, please state the name of each person and the manner in which each contributed to the cause of your alleged injury.

A.12.  See answer to Interrogatory #6.

Q13.  If you claim that your alleged injury was due to unseaworthiness of the defendant's vessel, please state:

    a.    each condition that made the vessel unseaworthy;
    b.    the date and approximate time when you first learned of such a condition;
    c.    the name, function, description and location, including weight and dimensions of any unseaworthy appliance, equipment or tool;
    d.    in what respect you claim such appliance, equipment or tool was unseaworthy.

A.13.  See answer to Interrogatory #6.

Q14.  If you claim that your alleged injury was due to a lack of any equipment, appliance or tool on said vessel, please state:

    a.    the name and function of such equipment, appliance or tool;
    b.    he date and time when you first knew such equipment, appliance or tool was not on the vessel.

A.14   See answer to Interrogatory #6.

Q15.    If you claim that your alleged injury was due to the defective or improper operation of any equipment, appliance or tool, please state:

   a.      who was operating or handling said equipment at the time of the incident;
   b.      your position and location in reference to such appliance or equipment at the time of injury.

A.15    Joe Lima
        See answer to Interrogatory #6.

Q16.    If you claim that the vessel's officers and crew members were unseaworthy, please state the name of each individual and each and every circumstance or condition that made him/her unseaworthy.

A.16.   See answer to Interrogatory #6.

Q17.    Please state whether you informed any officer, crew member or other person of any unseaworthiness of the vessel or its crew and if so:

   a.      the name and rating or description of each such person;
   b.      the date and time when you reported such unseaworthiness to every such officer, crew member or other person.

A.17.   See answer to Interrogatory #6.

Q18.    Please give an account, itemized as fully and as carefully as you can, of all losses and expenses which you claim you incurred as a result of the alleged incident, stating in your answer which of those losses or expenses are attributable to hospitals, doctors, nursing, medicines, medical appliances, and loss of earning capacity/loss of business income or profit.

A.18.   See medical bills previously provided.

        Plaintiff has been unable to work since the accident. Plaintiff claims past lost earning and future lost earnings. Plaintiff's wage loss will be determined by his past annual income which was approximately 40-50,000.00 a year and/or by the settlement sheets of the F/V MY WAY.

Q19.    If you are claiming any loss of earning capacity as a result of the alleged occurrence, please state:

   a.      the dates on which you were unable to work as a result of the alleged occurrence;
   b.      the total amount of earnings which you lost as a result of your absence;
   c.      the nature of your employment immediately prior to the alleged occurrence, including your job title, classification, or position;

      d.    the name and address of your employer or your place of business;

      e.    your earnings on a weekly, monthly or annual basis.

A.19.  From date of accident, October 4, 2003, to the present. Please see answer to Interrogatory #18.

Q20.  If you are working at the present time, please state the wages, salary or profit you are receiving, the date when you returned to work, and your total earnings for the past five years, specifying the amount per year.

A.20.  Not working.

      2003 approximately $35,000.00
      2002 approximately $58,000.00
      2001 approximately  $40,000.00
      2000 approximately $31,000.00
      1999 approximately $43,000.00

      Please see tax returns provided under separate cover.

Q21.  If you claim any personal injuries as a result of the incident alleged in your complaint, please state:

      a.    in full and complete detail, a description of each of the injuries you received, including all marks and bruises and what parts of the body were affected;

      b.    in full and complete detail, a description of each of the injuries you believe or have been told are permanent;

      c.    if you received any medical treatment, a description of such treatment in full and complete detail, giving the date and place each treatment was received;

      d.    if you received any treatment at any hospital, a description in full and complete detail of any such treatment, giving places, dates and whether received as an in-patient or an out-patient;

      e.    the name and address of each physician or medical practitioner who treated you as a result of the alleged incident, giving the date(s) each treated you; the nature and extent of the examination or treatment received and the diagnosis and prognosis made by each doctor or medical practitioner, including the date on which each such diagnosis or prognosis was made;

      f.    the dates upon or between which you were confined to your home;

      g.    the dates upon or between which you were confined to your bed;

      h.    the dates upon or between which you were absent from work;

      1.    an itemized statement of the charges made to you or any person or organization for your account by each doctor or medical practitioner or hospital, or in the alternative, attach a copy of the bill or statement from each doctor, medical practitioner or hospital

A.21.  a-i.    As a result of the accident, Plaintiff's right index finger was crushed and the finger was fractured at the proximal phalanx. Plaintiff's right index finger was amputated completely and part of the metacarpal bone was removed as well.

Plaintiff experiences phantom pain in his right hand, loss of strength and grip in his right hand, cold intolerance, swelling in his hand, shocks up the elbow, paresthesias and neuropathic pain.

Also see medical records submitted in response to request for production.

Plaintiff has been seen by the following:

Dr. Robert Sawyer
480 Hawthorn Street
North Dartmouth, MA 02747

Rhode Island Hospital
593 Eddy Street
Providence, RI 02903

Southcoast Rehabilitation Services
49 State Road
North Dartmouth, MA 02747

Healthsouth New England Rehabilitation
250 Faunce Corner Road
North Dartmouth, MA 02747

See medical records submitted in response to request for production for a detailed description of medical treatments provided.

See medical bills submitted in response to request for production.

Q22.  If you have not fully recovered from the alleged injuries or illnesses, please state:

a.    in which respect you failed to recover, including the way and the extent to which you are presently suffering;
b.    what injuries you believe or are informed are permanent.
c.    the name and address of each doctor who is now treating you;
d.    whether you are being treated at home, the doctor's office or in a hospital;
e.    the dates of your last treatment by each doctor, including the nature of each treatment;
f.    the diagnosis of each doctor.

A.22.   a-f.    See answer to Interrogatory #21.

Dr. Robert Sawyer
480 Hawthorn Street
North Dartmouth, MA 02747

Rhode Island Hospital
593 Eddy Street
Providence, RI 02903

Southcoast Rehabilitation Services
49 State Road
North Dartmouth, MA 02747

Q23.   If you had any accidents, physical injuries, illnesses or diseases before or after the
incident referred to in your complaint, please state each fully giving places and dates.

A.23.   Cut in the head
Stitches
Approximately 12 years ago
F/V ILA DO CORVO

Two mini strokes
March 1994
June 1995

High blood pressure
High cholesterol

Car accident
Fall 2004

Q24.   If you have made any other claim or claims for personal injuries against any person(s) or
corporations either before or after the date of the accident which was the basis of such
claim, the nature of said injuries, the name of the person(s) or corporation(s) against
whom said claim was made, and the name of the court and docket and/or claim numbers,
if any.

A.24.   Although an injury did occur there was never a claim filed and it was not reported to the
insurance company.  Cut in the head. Stitches.  Approximately 12 years ago.
F/V ILA DO CORVO

Q25.   If you reported your injuries or illnesses to anyone on the vessel, please state:

a.      the name, rating or description of each officer, crew member or other

10

      person whom you made such report;

b.    the exact time that elapsed between the time of the injury or illness and the time that report of said injury was made to any officer, crew member or other person;

c.    whether you received any assistance or treatment from any officer or crew member aboard said vessel. If so, state the name, rating and description of each such person.

A.25.  Captain and crew.

Q26.  Please state as to each and every witness, including parties, known to you or to your attorney or to any agent or employee of the plaintiff to have seen, heard or known about the alleged occurrence:

a.    the full name and address of each;

b.    the precise position/location of each witness at the time the witness saw, heard or learned about the alleged occurrence and what said person was doing;

c.    the substance and facts as complete as you can give it of all information and knowledge about the alleged occurrence known to each such witness.

A.26.  Objection. Plaintiff objects to Interrogatory #26 on the grounds that it exceeds the number of interrogatories allowed by allowed by the Federal Rules of Civil Procedure 33(a) and it violates the attorney work-product doctrine and/or the Federal Rules of Civil Procedure 26(b)(3) and (b)(4).

Q27.  If you or any agent or employee of the plaintiff ever took or received any statement, declaration, affidavit or interview, either oral or in writing from any person, including parties, who had information or knowledge relating to the alleged occurrence, please state:

A.27.  Objection. Plaintiff objects to Interrogatory #27 on the grounds that it exceeds the number of interrogatories allowed by allowed by the Federal Rules of Civil Procedure 33(a) and it violates the attorney work-product doctrine and/or the Federal Rules of Civil Procedure 26(b)(3) and (b)(4).

Q28.  If you or any agent or employee of the plaintiff ever had a conversation with any person including parties, who had information or knowledge relating to the alleged occurrence, please state:

a.    the full name and address of each person with whom the plaintiff had such a conversation;

b.    the date of each conversation;

c.    who else, if anyone, was present at the time of the conversation;

    d.     the substance and content as best you can state of the conversation.

A.28.   Objection.  Plaintiff objects to Interrogatory #26 on the grounds that it exceeds the number of interrogatories allowed by allowed by the Federal Rules of Civil Procedure 33(a) and it violates the attorney work-product doctrine and/or the Federal Rules of Civil Procedure 26(b)(3) and (b)(4).

Q29.   **Please identify each and every person you may call as an expert witness at trial; and,** relative to each such person, please state and/or describe:

    a.     all opinions expected to be expressed by each expert;

    b.     the basis and reasons for each and every opinion, including all facts upon which each expert relies in forming each opinion;

    c.     the data or other information considered by each expert in forming the opinions described in (a);

    d.     any exhibits to be used as a summary of or support for the opinions described in (a);

    e.     the qualifications of each expert, including a list of all publications authored by same within the preceding ten years;

    f.     the compensation to be paid for the study and testimony of each expert; and

    g.     a list of any other cases in which each expert has testified as an expert at trial or by deposition within the preceding four years.

A.29.   Objection.  Plaintiff objects to Interrogatory #26 on the grounds that it exceeds the number of interrogatories allowed by allowed by the Federal Rules of Civil Procedure 33(a) and it violates the attorney work-product doctrine and/or the Federal Rules of Civil Procedure 26(b)(3) and (b)(4).

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS _21 ST_ DAY OF _JUNE_ _2005_.

_Carlos Aguiar_

CARLOS AGUIAR