UNITED STATES DISTRICT COURT
for the
DISTRICT OF MASSACHUSETTS

_____ )
                                  )
CARLOS AGUIAR                     )
        Plaintiff                 )
                                  )        Civil Action No.  04-12011-MLW
Vs.                               )
                                  )
LIMA AND CURA FISHING             )
CORPORATION.                      )
        Defendant                 )
_____ )


PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS
AND
RESPONSE TO DEFENDAN'S STATEMENT OF UNDISPUTED MATERIAL FACTS


Now comes the Plaintiff in the above captioned matter and Pursuant to F.R.Civ.P. 56 and

Local Rule 56.1 submits the following Statement of Undisputed Material Facts and responds to

Defendant's Statement of Undisputed Material Facts as follows:


        I.    Plaintiff's Response to Defendant's Statement of Undisputed Material Facts.

1.      Admitted

2.      Admitted

3.      Admitted

4.      Admitted

5.      Plaintiff admits all of the facts set forth in paragraph 5 of Defendant's Statement of

Material Facts **except** for the last sentence stateing that there was mud on the door.  Depo. of

Capt. Cura, Def. Ex. "D" Page 24, Lines 6-7 (Q: "And you saw that there was no mud on the

door" A: "I don't remember seeing any").  Plaintiff also notes that immediately prior to dropping

down, the door rose up.  Affidavit of Carlos Aguiar, Ex. "A", Para. 4.

6.      Admitted.

7.      The Plaintiff admits the facts set forth in Paragraph #7 of <u>Defendant's Statement of</u>

<u>Material Facts</u> **except** for the assertion that "The winch was operating properly".  If in fact, Mr.

Lima had properly tightened down the winch brake and if Mr. Lima did not activate the controls

all as testified to in his deposition, then the spontaneous, unexpected and unexplained movement

of the winch under normal and expected working conditions supports a finding that the winch

was not operating properly.  <u>Depo. of Lima</u>, Def. Ex. "E", Pages 50-51.  <u>Affidavit of Carlos</u>

<u>Aguiar</u>, Plaintiff's Exhibit "A", Page 4, Para. 11.


        II.      <u>Plaintiff's Statement of Material Facts to Which there is a Genuine Issue to be</u>

                 <u>Tried.</u>

1.      Whether the movement of the "door" resulting in Plaintiff's injury was caused by A) the

Negligence of the winch operator, Joe Lima, in negligently failing to tighten down the winch

brake and/or negligently operating the winch controls <u>or</u>  B) the movement of the "door"

resulting in Plaintiff's injury was caused by defective and therefore unseaworthy port side winch

and/or winch brake.


        III.    <u>Plaintiff's Statement of Material Facts to Which There is No Genuine Issue to be Tried</u>


1.      On October 4, 2003 Plaintiff's right index finger was crushed and eventually amputated

when the port side tow winch hauled in and then let out wire causing a piece of equipment

Plaintiff was working with, called a "door",  to drop.  There are two doors (port and starboard)

on a ground fishing vessel.  A "door" is a large door shaped piece of steel that is  attached to the

port and starboard tow wires and then to the port and starboard sides of the net.  The port and

starboard "doors" function like underwater kites, keeping the mouth of the net spread open as it is dragged along the ocean bottom. Affidavit of Carlos Aguiar, Ex. "A", Para 1.

2.      The port and starboard "doors" are connected to the port and starboard tow wires which are hauled in and set out by the port and starboard towing winches. At the time of the accident Plaintiff was working as the port side hook-up man and was standing next to the Port gallus frame located on the aft end of the vessel. This location is dozens of feet away from the Port side winch controls and brake that lift lower and secures the Port side door. From this location Plaintiff had absolutely no ability to control the winch, the winch brake and/or to lift or lower the "door". Affidavit of Carlos Aguiar, Ex. "A", Para. 2.

3.      At the time of the accident Plaintiff was attempting to secure the port side "door" with a safety chain attached to the port side gallus. Affidavit of Carlos Aguiar, Ex. "A", Para. 3.

4.      After Plaintiff had secured the chain through the door Plaintiff was attempting to hook it to the gallus when the door suddenly lifted up and then immediately dropped down into the water. Affidavit of Carlos Aguiar, Ex. "A", Para. 4.

5.      When the door dropped it pulled the safety chain tight and caused Plaintiff's finger to be crushed by the hook. Affidavit of Carlos Aguiar, Ex. "A", Para. 5.

6.      At the time of Plaintiff's accident, the winch was being operated by Joe Lima. At the time of Plaintiff's accident Plaintiff was facing away from Mr. Lima and did not see whether or not Lima tightened the winch brake nor did Plaintiff see whether Lima moved the hydraulic controls. Affidavit of Carlos Aguiar, Ex. "A", Para. 6.

7.      The two trawl winches on the F/V MY WAY are equipped with hydraulic controls which have three positions, forward, neutral and reverse. Placing the hydraulic controls in forward causes the winch to turn such that it pays out wire. Placing the hydraulic controls in reverse causes the winch to haul in the wire. When the controls are in neutral and the hydraulic system

3

is activated the winch will not move.  In addition both trawl winches on the F/V MY WAY are equipped with a manual brake.  The purpose of the manual brake is to stop the winch from either letting out or hauling in the tow wire.  A vessel such as the F/V MY WAY is rigged such that the port towing wire goes from the port towing winch across the work deck and through a block hanging from the port gallus frame located on the port side of the stern.  After passing through the hanging block the tow wire hangs down to the port "door" which hangs on the wire from the hanging block.  Hanging off the port "door" is the port side of the net.  Affidavit of Carlos Aguiar, Ex. "A", Para. 8.

8.     The proper procedure for hauling back the net on a ground fishing trawler such as the F/V MY WAY is as follows:

a.     First the vessel is maneuvered to haul back, the hydraulic system is powered and the then winch brake is un-tightened Affidavit of Carlos Aguiar, Ex. "A", Para 9a.

b.     Then the winch operator places the hydraulic controls in the reverse or "haul back" position.  This causes the towing winch to haul in the tow wire which is attached to the "door" and then to the net.  Affidavit of Carlos Aguiar, Ex. "A", Para. 9b.

c.     The winch operator continues to haul in the towing wire until the "door" is pulled out of the water and hangs on a block next to the gallus frame.  Once the "door" is hanging on the towing wire next to the gallus frame, the winch operator then places the hydraulic controls in the neutral position and then immediately tightens down the winch brake.  Affidavit of Carlos Aguiar, Ex. "A", Para. 9c.

d.     Once the "door" comes to a stop alongside the gallus frame, the hook-up man then passes a safety chain through the "door" and attaches the end of the chain to a hook hanging from the gallus frame.  Once the safety chain is secured, the hook-up man steps back away from the gallus frame. Affidavit of Carlos Aguiar, Ex. "A", Para. 9d.

e.      Once the hook-up man has hooked up the safety chain and has stepped back away from the gallus frame, the winch operator un-tightens the winch brake, places the hydraulic control in the forward positions, lets out wire and thereby lowers the door until it is now hanging on the safety chain.  Once the door is hanging on the safety chain the winch operator places the control lever in neutral and tightens the winch brake.  Affidavit of Carlos Aguiar, Ex. "A", Para. 9e.

f.      The rest of steps in the haul back procedure involve transferring the net to the "net reel" and dumping the catch onto the work deck.  These steps do not involve the towing winches, had not taken place yet at the time of Plaintiff's accident and have nothing to do with Plaintiff's accident. Affidavit of Carlos Aguiar, Ex. "A", Para  9.f

9.      The purpose for which the winch brake is intended and used is to stop the winch from either paying out or hauling in the towing wire. Affidavit of Carlos Aguiar, Ex. "A", Para. 10. Depo. of Lima, Def. Ex. "E", Pages 57-58

10.     If a winch brake is working properly and is tightened down properly, then it will prevent the winch from either hauling in or paying out wire no matter how heavy the gear is and even if the hydraulic controls are placed in the forward or reverse position.  A properly functioning brake which is tightened down properly is stronger then the hydraulic system on the winch.  This means that if the winch brake is functioning properly it will prevent anything which the winch hauls up from slipping back down.  Affidavit of Carlos Aguiar, Ex. "A", Para 11.  Depo of Lima, Def. Ex. "E" Pages 57-58.

12.     The only time a properly functioning winch brake should slip is when the fishing vessel is towing a net and the net becomes stuck or "hung up" on the ocean bottom.  The winch brake is designed to slip under these circumstances so as to prevent the force of the fishing vessel traveling through the water from breaking the tow wires.  This is the only time a properly

functioning winch brake will slip.  At the time of Plaintiff's accident the net was not "hung up" on the bottom.  At the time of Plaintiff's accident the F/V MY WAY was fishing in approximately 100 fathoms of water.  The distance from the doors to the end of the net (the cod end) is approximately 30 fathoms.  The "doors" were out of the water, therefore the end of the net was approximately 70 fathoms (420 ft.) above the ocean floor.  Affidavit of Carlos Aguiar, Ex. "A", Para. 12.  Depo. of Capt. Cura, Def. Ex. "D", Page 28.

13.     A ground fish dragger such as the F/V MY WAY regularly fishes in all types of ocean bottom including muddy, sandy and rocky bottoms.  Fishing in muddy bottom is normal and expected on a ground fish dragger such as the F/V MY WAY.  When fishing in muddy bottom there will be some mud on the fish in the net.  After the net is dumped and the fish are sorted the remaining mud is simply hosed off the deck.   This is normal and expected and at most adds a couple hundred pounds to the net, gear and fish weighing 10,000 to 20,000 pounds.  Affidavit of Carlos Aguiar, Ex. "A", Para. 13.  Depo of Capt. Cura, Def. Ex. "D", Pages 17-18. Depo of Lima, Def. Ex. "E", Page 40.

14.     In connection with Plaintiff's accident Plaintiff followed all of the proper hook up procedures established on the F/V MY WAY and customarily used within the ground fishing industry. Affidavit of Carlos Aguiar, Ex. "A", Para. 14.

15.     The controls for the towing winch are dozens of feet from the location Plaintiff was standing at the time of Plaintiff's accident.   Plaintiff had absolutely not ability to control the movement of the winches and/or the "door". Affidavit of Carlos Aguiar, Ex. "A", Para. 15.

16.     The winch operator Mr. Lima failed to properly tighten the winch brake after he hauled the door alongside the gallus frame and prior to Plaintiff's accident.   This reasonable inference is based upon the fact that if the winch brake was properly tightened, and if it was working properly it could not have let wire in or out thereby causing the door to rise or fall.  It is a

reasonable inference that the brake was functioning properly because the vessel had just finished a 4-5 hour tow of the net during which time port side of the net was being held by the port side winch brake.   There is a far greater strain on the tow wires when the vessel is towing then when the vessel is hauling in the net.  If the brake was faulty or defective, it would have slipped during a tow before it slipped during a haul back.  Affidavit of Carlos Aguiar, Ex. "A", Para. 16.

17.    The door hangs from the tow wire which in turn hangs off a block on the Gallus.  While a faulty brake can cause the "door" to drop, the only thing that can cause the door to rise is the tow winch hauling in wire.  Affidavit of Carlos Aguiar, Ex. "A", Para 17.

18.    Based upon the fact that the door first rose up and then dropped down, it is a reasonable inference that the winch operator Mr. Lima failed to tighten down the winch brake and then accidentally placed the winch controls in reverse (causing the door to rise) and then immediately placed the control in forward (causing the door to drop).   By doing so, Mr. Lima failed to follow the proper procedures for operating the tow winch during a haul back.  Affidavit of Carlos Aguiar, Ex. "A", Para 18.

19.    It is not safe for the winch operator to move the door with the winch when a hook-up man is working in the vicinity of the door.  Depo. of Capt. Cura, Def. Ex. "D", Pages 11-12.

20    At the time of Plaintiff's accident the winch operator, Lima, had one hand on the hydraulic controls of the winch and one hand on winch brake controls.  Depo. of Lima, Def. Ex. "E", Pages 50-51.

21.    Neither Capt. Cura nor the Plaintiff saw what Lima did with his hands at the time of Plaintiff's accident.  Depo. of Capt. Lima, Def. Ex. "D", Page 35. Affidavit of Carlos Aguiar, Ex. "A", Para. 6.

22.    At the time of the accident the weather was calm.  Depo of Capt. Cura, Def. Ex. "D", Page 17.

23.    In Defendant's answers to interrogatories, signed by Capt. Cura who observed the accident, the Defendant was asked to state the basis of Defendants claim that the Plaintiff was contributorily negligent.  In its answer the Defendant was unable to identify a single act or omission committed by the Plaintiff that would serve as a basis of its claim that Plainitiff's own negligence caused or contributed to his injury.  <u>Def. Answers to Interrogatories</u>, Pl. Ex. "B",

-

Respectfully Submitted on
behalf of the Plaintiff Carlos Aguiar,
by his attorney,


/s/ David F. Anderson, Esq.
David F. Anderson
Latti & Anderson LLP
30-31 Union Wharf
Boston, MA 02109
(617) 523-1000


CERTIFICATE OF SERVICE
    I hereby certify that on this date, I electronically filed the within document with the Clerk of the Court using the CM/ECF system which will send notification of such filing(s) to all counsel of record.


/s/ David F. Anderson, Esq.
David F. Anderson, Esq.
Latti & Anderson LLP
30-31 Union Wharf
Boston, MA 02109
617-523-1000

Dated: