

PLAINTIFF'S EXHIBIT "A"

UNITED STATES DISTRICT COURT
for the
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CARLOS AGUIAR<br>    Plaintiff<br><br>Vs.<br><br>LIMA AND CURA FISHING CORPORATION.<br>    Defendant | Civil Action No. 04-12011-MLW |

## AFFIDAVIT OF CARLOS AGUIAR

I Carlos Aguiar, under oath state as follows:

1. On October 4, 2003 my right index finger was crushed and eventually amputated when the port side tow winch hauled in and then let out wire causing a piece of equipment I was working with, called a "door", to drop. There are two doors (port and starboard) on a ground fishing vessel. A "door" is a large door shaped piece of steel that are attached to the port and starboard tow wires and then to the the port and starboard sides of the net. The port and starboard "doors" function like underwater kites, keeping the mouth of the net spread open as it is dragged along the ocean bottom.

2. The port and starboard "doors" are connected to the port and starboard tow wires which are hauled in and set out by the port and starboard towing winches. At the time of the accident I was working as the port side hook-up man and was standing next to the Port gallus frame located on the aft end of the vessel. This location is dozens of feet away from the Port side winch controls and brake that lift lower and secure the Port side door. From this location I had absolutely no ability to control the winch, the winch brake and/or to lift or lower the "door".

3. At the time of the accident I was attempting to secure the port side "door" with a safety chain attached to the port side gallus.

4. After I had secured the chain through the door I was attempting to hook it to the gallus when the door suddenly lifted up and then immediately dropped down into the water.

5. When the door dropped it pulled the safety chain tight and caused my finger to be crushed by the hook.

6. At the time of my accident the winch was being operated by Joe Lima. At the time of my accident I was facing away from Mr. Lima and did not see whether or not he tightened the winch brake nor did I see whether he moved the hydraulic controls.

7. I have been commercial ground fishing trawlers such as the F/V MY WAY for more than ten years. I fished on the F/V MY WAY for approximately two years. I am experienced and have expertise in the proper operation of winches on a commercial ground fishing trawler such as the F/V MY WAY. I have experience and expertise in the proper operations on a ground fishing trawler such as the F/V MY WAY including the proper procedures for hauling in and setting out the net.

8. The two trawl winches on the F/V MY WAY are equipped with hydraulic controls which have three positions, forward, neutral and reverse. Placing the hydraulic controls in forward causes the winch to turn such that it pays out wire. Placing the hydraulic controls in reverse causes the winch to haul in the wire. When the controls are in neutral and the hydraulic system is activated the winch will not move. In addition both trawl winches on the F/V MY WAY are equipped with a manual brake. The purpose of the manual brake is to stop the winch from either letting out or hauling in the tow wire. A vessel such as the F/V MY WAY is rigged such that the port towing wire goes from the port towing winch across the work deck and through a block

hanging from the port gallus frame located on the port side of the stern. After passing through the hanging block the tow wire hangs down to the port "door" which hangs on the wire from the hanging block. Hanging off the port "door" is the port side of the net. The rigging on the starboard side is identical to that of the port. This basic rigging is illustrated below:



9.      Based upon my experience within the ground fishing industry as well as my experience on the F/V MY WAY, the proper procedure for hauling back the net on a ground fishing trawler such as the F/V MY WAY is as follows:

    a.      First the vessel is maneuvered to haul back, the hydraulic system is powered and the then winch brake is un-tightened

    b.      Then the winch operator places the hydraulic controls in the reverse or "haul back" position. This causes the towing winch to haul in the tow wire which is attached to the "door" and then to the net. .

    c.      The winch operator continues to haul in the towing wire until the "door" is pulled out of the water and hangs on a block next to the gallus frame. Once the "door" is hanging on

the towing wire next to the gallus frame, the winch operator then places the hydraulic controls in the neutral position and then immediately tightens down the winch brake.

    d.    Once the "door" comes to a stop alongside the gallus frame, the hook-up man then passes a safety chain through the "door" and attaches the end of the chain to a hook hanging from the gallus frame. Once the safety chain is secured, the hook-up man steps back away from the gallus frame.

    e.    Once the hook-up man has hooked up the safety chain and has stepped back away from the gallus frame, the winch operator un-tightens the winch brake, places the hydraulic control in the forward positions, lets out wire and thereby lowers the door until it is now hanging on the safety chain. Once the door is hanging on the safety chain the winch operator places the control lever in neutral and tightens the winch brake.

    f.    The rest of steps in the haul back procedure involve transferring the net to the "net reel" and dumping the catch onto the work deck. These steps do not involve the towing winches, had not taken place yet at the time of my accident and have nothing to do with my accident.

10.    The purpose for which the winch brake is intended and used is to stop the winch from either paying out or hauling in the towing wire.

11.    If a winch brake is working properly and is tightened down properly, then it will prevent the winch from either hauling in or paying out wire not matter how heavy the catch and gear are, and even if the hydraulic controls are placed in the forward or reverse position. A properly functioning brake which is tightened down properly is stronger then the hydraulic system on the winch. This means that if the winch brake is functioning properly it will prevent anything which the winch hauls up from slipping back down.

4

12.     The <u>only</u> time a properly functioning winch brake should slip is when the fishing vessel is towing a net and the net becomes stuck or "hung up" on the ocean bottom. The winch brake is designed to slip under these circumstances so as to prevent the force of the fishing vessel traveling through the water from breaking the tow wires. This is the only time a properly functioning winch brake will slip. At the time of my accident the net was not "hung up" on the bottom. At the time of my accident the F/V MY WAY was fishing in approximately 100 fathoms of water. The distance from the doors to the end of the net (the cod end) is approximately 30 fathoms. The "doors" were out of the water, therefore the end of the net was approximately 70 fathoms (420 ft.) above the ocean floor.

13.     A ground fish dragger such as the F/V MY WAY regularly fishes in all types of ocean bottom including muddy, sandy and rocky bottoms. Fishing in muddy bottom is normal and expected on a ground fish dragger such as the F/V MY WAY. When fishing in muddy bottom there will be some mud on the fish in the net. After the net is dumped and the fish are sorted the remaining mud is simply hosed off the deck.  This is normal and expected and at most adds a couple hundred pounds to the net, gear and fish weighing 10,000 to 20,000 pounds.

14.     In connection with my accident I followed all of the proper hook up procedures established on the F/V MY WAY and customarily used within the ground fishing industry.

15.     The controls for the towing winch are dozens of feet from the location I was standing at the time of my accident.   I had absolutely not ability to control the movement of the winches and/or the "door".

16.     Based upon my experience and expertise, it is my opinion that Mr. Lima failed to properly tighten the winch brake after he hauled the door alongside the gallus frame and prior to my accident. This opinion is based upon the fact that if the winch brake was properly tightened

and if it was working properly it could not have let wire in or out thereby causing the door to rise or fall. In my opinion the brake was functioning properly because the vessel had just finished a 4-5 hour tow of the nets during which time the brake did not slip at all. There is a far greater strain on the tow wires when the vessel is towing then when the vessel is hauling in the net. If the brake was faulty, it would have slipped during a tow before it slipped during a haul back.

17. As indicated previously the door hangs from the tow wire which in turn hangs off a block on the Gallus. While a faulty brake can cause the door to drop, the only thing that can cause the door to rise is the tow winch hauling in wire.

18. Based upon my experience and expertise, and further based upon the fact that the door first rose up and then dropped down, it is my opinion that the winch operator Mr. Lima failed to tighten down the winch brake and then accidentally placed the winch controls in reverse (causing the door to rise) and then immediately placed the control in forward (causing the door to drop). By doing so, Mr. Lima failed to follow the proper procedures for operating the tow winch during a haul back.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 27TH DAY OF JANUARY 2006

JAMES A. COMFORT, JR.
Notary Public
Commonwealth of Massachusetts
My Commission Expires
October 8, 2010

CARLOS AGUIAR

6