UNITED STATES DISTRICT COURT
for the
DISTRICT OF MASSACHUSETTS

Civil Action No. 04-12011-MLW

| | |
|---|---|
| CARLOS A. AGUIAR, | ) |
| Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| LIMA & CURA FISHING | ) |
| CORPORATION, | ) |
| Defendant | ) |

## DEFENDANT LIMA & CURA FISHING CORPORATION'S TRIAL BRIEF

### SUMMARY OF THE EVIDENCE

The defendant has previously provided a summary of the evidence in the Joint Pretrial Memorandum. The defendant will not belabor the point here but suffice it to say that the defendant disagrees as to what caused the injury and indeed claims that the plaintiff was at least contributorily negligent. There is and will be no evidence that the winch was defective in any manner. It is expected that the testimony of Mr. Aguiar, Mr. Lima and Mr. Cura will reveal that there was nothing wrong with the winch or with the winch brake. Indeed, the testimony will also show that there were ever any alterations or repairs done to the brake itself.

The defendant contends that the plaintiff's expected testimony is speculative, i.e., that it was either the operator's fault or the winch was defective. The fact is the plaintiff does not know what happened because he had his back turned and the defendant can offer several other probabilities that were in play here.

**ISSUES OF LAW**

I. **JONES ACT NEGLIGENCE**

This is a fairly straightforward case of Jones Act negligence presenting no unusual questions. The defendant refers the court to its jury instructions as setting forth the law on Jones Act negligence and Jones Act causation.

II. **UNSEAWORTHINESS**

Again, the defendant expects that the evidence will show that there were no defects in the operation of the winch or the winch brake. This court, in ruling on the parties' cross-motions for summary judgment, relied heavily on the cases on Havens v. F/T POLAR MIST, 996 F.2d 215 (9th C. 1993); Lee v. Pacific Far East Line, Inc., 566 F.2d 65 (9th C. 1977); Gibbs v. Kiesel & Kiesel Bros., Inc., 382 F.2d 917. Each of these cases is distinguishable from the instant case. The overall doctrine established by those cases is that failure or a malfunction of vessel equipment under normal use establishes unseaworthiness. The evidence in this case will not establish any failure or malfunction of vessel equipment. According to Mr. Aquiar, the winch and the winch brake operated as it was expected to operate. He is expected to testify that just before he was injured, the door raised up and then crashed down into the sea, which raises a question of what the winch operator, Mr. Lima, was doing and whether or not he was negligent at the time, but does not in and of it itself, implicate the equipment being used. Consequently, the thrust of the plaintiff's case is that Mr. Lima affirmatively operated the controls, not that there was a failure or a malfunction of equipment.

The plaintiff's attorney's alternative theory seems to be that, if the jury

disbelieves Mr. Aguiar, Mr. Aguiar should still recover based on the testimony of Mr. Lima that he was not operating the controls at the time of the injury, thus leading to some inference that there was a failure or malfunction of the equipment. This is not a rational inference, however, and is not supported by any of the other evidence. If the jury disbelieves Mr. Aguiar, then the door did not rise up and crash down into the sea just prior to his injury. The only other testimony will be that of Mr. Lima and Mr. Cura. As indicated before, Mr. Lima's testimony is expected to be that the brake was on securely and he did not operate the winch or the brake further. The defendant attributes the cause of the plaintiff's injury to the swaying motion of the door, coupled with the naturally occurring motion of the vessel even in normal weather conditions, as well as the heavy weight on the net and Mr. Aguiar's own failure to be careful.

One of the underpinnings of Havens was the fact that there was no evidence supporting any alternative explanation for why a hatch cover fell on the plaintiff. The additional facts in that case were that there was a fish ladder located next to the hatch cover which prevented the cover from being placed flat on the deck of the ship. There is no such evidence that the winch or winch brake was incapable of doing what it was designed to do. The allegation of negligence on behalf of Mr. Lima, itself, raises an alternative explanation for what happened, not to mention the defense theory of the case involving the free swinging motion of the door onboard a moving vessel, etc.

Likewise, in Lee, supra, a valve was frozen in a fully opened position which contributed to the plaintiff's back injury in that case. Clearly, the valve failed to function properly.

In Gibbs, which is, admittedly, similar to the facts in this case, the doors which

fell had been secured and nobody was near them at the time of the accident. The court made reference to the doctrine of res ipsa loquitur reasoning that the doors would not have fallen if they were not defective in some manner. Res ipsa loquitur would only apply when there is simply no other explanation for the accident. See Gibbs, supra. The case really centered on the plaintiff's inability to point to a particular defect which caused the doors to fall and the defendant defended on the grounds that, absent affirmative proof a specific defect, there can be no finding of unseaworthiness. Again, the evidence here will be materially different as there will be testimony concerning exactly what happened from all of the parties present and exactly what Mr. Lima did at the controls of the winch.

### III.    MAINTENANCE & CURE

Obviously, the seaman is entitled to maintenance & cure until the time that he reaches maximum medical cure. The defendant does not believe that cure is an issue in this case as it has paid all medical bills and knows of no outstanding medical bills. If there are any outstanding medical bills, the defendant will pay them. Accordingly, the only issue is maintenance.

The defendant has paid maintenance to the plaintiff from the date of the accident to September 5, 2005, in the total amount of $10,545.00. This was paid at the customary rate of $15.00 per day. The plaintiff is, apparently, not alleging a willful failure to pay maintenance but merely disputes the rate of maintenance. Additionally, the plaintiff has never brought this issue to the attention of the court before nor has it, in correspondence with the defendant, questioned the rate of maintenance. It wasn't until the pretrial memorandum was prepared that the plaintiff first revealed that he would be contesting the particular rate of maintenance. Accordingly, the defendant believes that Count IV of

the Plaintiff's Complaint for willful failure to pay maintenance should be dismissed.

Furthermore, while the plaintiff is entitled to bring a case for maintenance & cure to the jury when combined with a Jones Act and unseaworthiness claim such as in this case, the right to maintenance is not contested here and, it is believed, that the amounts paid are not contested by the plaintiff.  Since the only issue is the amount of maintenance, the defendant suggests that this can be accurately decided by the court as it would if this were a pretrial motion to increase the amount of maintenance.  The defendant, of course, is willing to stipulate to the amount of maintenance paid and the period paid for.

It is anticipated that the plaintiff will argue that the full amount of rent should be taken into consideration in this case.  The fact of the matter is that the law in the 1st Circuit is defined by <u>Macedo v. F/V PAUL & MICHELLE</u>, 868 F.2d 519 (1st C. 1989), which says that the seaman is entitled to recover only for those expenses related to his own sustenance and shelter and that he is not entitled to recovery for the support of other people.  This would necessitate a finding that the plaintiff only recovers his proportionate percentage of lodging expenses and necessary food.  Indeed, the plaintiff is claiming that the maintenance rate should amount to $150.00 per week as opposed to the $105.00 per week that was actually paid (7 x $15).  It is entirely possible, and seems likely, that when the <u>Macedo</u> formula is applied, that the defendant may have been overpaying the rate of maintenance in this case.  <u>Gillikin v. United States</u>, 764 F.Supp. 270 (E.D. N.Y. 1991) stands for the same principle as <u>Macedo</u>.

If the issue is to be placed in front of a jury, the defendant requests that the jury be instructed that maintenance is an obligation of the ship owner without regard to fault but rather is an incident of the seaman's employment contract.  The jury should further be

instructed that the defendant has paid the above sums of maintenance at the rate of $15.00 a day and that the plaintiff believes the rate should be higher.  At that point, it would be up to the jury to determine the facts (the actual amount of reasonable living and food expenses and taking into account the Macedo division) to determine a weekly amount.  This weekly amount should then be multiplied by 52 and divided by 365 to obtain a daily rate.  If that fact finding exceeds $15.00, the defendant is entitled to an offset of the $15.00 per day that it has previously paid.  If that figure is less than the $15.00 per day, the defendant is entitled to recover for its overpayment.

If the court rules that Macedo applies, the issue of maintenance probably becomes moot.  The plaintiff lives with his wife and daughter.  Even if the rent were divided by just two and not three, it would be $55.00 per week.  Even giving full credit for heat, electricity and food totaling $50.00, the amount only rises to $105.00 per week, which is precisely what has been paid in this case.

**IV.    ADVANCES**

Advances in the amount of $6,600.00 have been paid to Mr. Aguiar and the defendant is entitled to offset that amount against any judgment.

**CONCLUSION**

These are the issues that the defendant feels will be raised by this case.  The defendant expects that the evidence will show that the plaintiff was contributorily negligence at a minimum and at a maximum was the proximate cause of his own injuries, or that the plaintiff's injuries were as a result of accidental forces.  The other issues regarding the extent of damages are outlined in the pretrial memorandum and really amount to a dispute over wage earning and fact finding and do not present any unusual

questions of law.

## ATTACHMENTS

Attached to this brief, as requested by the court, are the following documents:

1. Proposed Voir Dire Questions;

2. Requests for Jury Instructions; and

3. Proposed Special Jury Verdict Form.

For the Defendant,
By its Attorneys,

**REGAN & KIELY LLP**


    /s/ Joseph A. Regan
Joseph A. Regan, Esquire (BBO #543504)
88 Black Falcon Avenue, Suite 330
Boston, MA  02210
(617)723-0901
