# United States Court of Appeals
## For the First Circuit

No. 01-1027

TIMOTHY HOPKINS,
Plaintiff, Appellant,

v.

JORDAN MARINE, INC.,
Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE
[Hon. Gene Carter, U.S. District Judge]

Before

Boudin, Chief Judge,
Lynch, Circuit Judge,
and DiClerico,[1] District Judge.

Carolyn M. Latti with whom Latti & Anderson LLP was on brief for appellant.

William H. Welte with whom Welte & Welte, P.A. was on brief for appellee.

October 29, 2001

BOUDIN, Chief Judge. In June 1998, Timothy Hopkins was injured at sea while serving aboard the F/V Jamie & Ashley. The accident occurred while the ship was letting out a fishing net from a reel mounted at the aft end of the vessel. The reel was controlled by another crew member, Ben Farrington, who operated hydraulic controls on the port side. Hopkins was standing on the starboard side of the reel as the net unwound into the sea.

During the unwinding, a portion of the net slipped off the port side of the reel, falling over the edge of the flange extending upward on either side of the reel. Farrington stopped the mechanism and climbed up the side of the reel to stow the loose portion. Hopkins approached the reel from the other side to assist as Farrington finished and descended. Hopkins stooped over, either (depending on whose testimony is believed) to free the net from entanglement with a scallop ring near the base of the reel or to pick up something from the deck.

While bent over, Hopkins was struck in the back by a can that was one of many attached to the net as a buoy to keep it from sinking when in the water. Hopkins alleged that this occurred because Farrington started up the reel mechanism without first making sure that Hopkins was clear of the area and, more broadly, that the accident occurred because the reel flanges were not high enough to contain a net of this size. Farrington denied starting the reel while Hopkins was in the way.

Having suffered a herniated disk in the accident, Hopkins sued the ship owner, Jordan Marine, Inc., charging that the ship was unseaworthy because the net bulged over the edge of the flanges and for other reasons and that under the Jones Act, 46 U.S.C. § 688 (1994), the ship owner was liable for Farrington's alleged negligence and for negligence of the captain in several different respects. Jordan Marine's position was that the flanges were adequate, that the can had fallen because a portion of the net had parted from hard use (as nets sometimes do) and that Hopkins was himself negligent in straying--without warning Farrington--into a "blind spot" in which the reel blocked the control operator's view.

The jury returned a verdict against Hopkins, finding separately that Jordan Marine had not been proved negligent and the vessel had not been proved unseaworthy. The district court denied Hopkins' motion for a new trial and he appeals. In this court he contends that the district court erred in two respects in instructing the jury. He also says that Jordan Marine's expert was not qualified to testify.

Of the three claimed errors, one is of general interest. In a charge extending over 53 transcript pages, the district court at one point told the jury: "If you find that the plaintiff's alleged injuries were the result of his failing to observe an obvious condition, you will find for the defendant." This, argues Hopkins, invited the jury to reject his claims based on the doctrine that a plaintiff may not recover for risks that he knowingly assumed. Jordan Marine says that the objection was not adequately preserved but we think that it may have been and will assume that it was.[2]

Assumption of the risk is a doctrine associated with common law tort liability. Like many such phrases, it has been used in more than one way, Prosser and Keeton on Torts, § 68 at 480-98 (5th ed. 1984); Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 68-69 (1943)(Frankfurter, J., concurring); but in one version, the doctrine was understood to block an employee from recovering for negligent behavior or conditions for which the employer was responsible if the risk was apparent to the employee and the employee continued voluntarily in his employment, thereby "assuming the risk."

Through stages that need not be described, see Gilmore & Black, The Law of Admiralty 351-57 (2d. ed. 1975), assumption of the risk has now been eliminated as a defense to unseaworthiness claims and to claims for negligence under the Jones Act. Socony-Vacuum Oil Co. v. Smith, 305 U.S. 424, 429 (1939); The Arizona v. Anelich, 298 U.S. 110, 122 (1936). But contributory negligence remains as a defense to both sets of claims; the jury is told that if the plaintiff's own negligence played a part in causing the injury, then any liability of the defendant is to be reduced by the percentage or proportion by which the plaintiff contributed to his own injuries. Wilson v. Maritime Overseas Corp., 150 F.3d 1, 11 (1st Cir. 1998); 5 Sand, et al., Modern Federal Jury Instructions, Inst. 90-29 at 90-52 (2001).[3]

In this case, the instruction quoted above--"failing to observe an obvious condition"--appears at the end of a paragraph that occurs after the court had described both the unseaworthiness and negligence claims and had turned to describing the defense of contributory negligence. Wrapping up the discussion, the court then doubled back to say that the ship owner's duty was to provide a ship safe for a crew member "who exercise[s] ordinary care" but not necessarily to provide "notice of a danger which is obvious through the use of ordinary senses." There then followed the objected to sentence which completed the paragraph.

The sentence does not say that assumption of an obvious risk is a defense to unseaworthiness or negligence on the part of the shipowner. Rather, it says that a ship is not unseaworthy or an owner negligent merely because the ship owner does not anticipate that a crew member will behave negligently. Possibly the statement goes a shade too far (perhaps in some repeat situations carelessness should be anticipated); but it is certainly not an instruction that--

10/04/2006 17:50 FAX 1 207 236 4939  WELTE & WELTE  ☒005



on account of the seaman's carelessness--the owner or ship can escape liability for its <u>own</u> negligent act or unseaworthy condition.

Indeed, in the next two paragraphs, the district court went out of its way to refute the inference drawn by Hopkins. The court said that while the plaintiff must act reasonably to avoid apparent dangers, a "seaman does not assume the risk created by the failure of the ship to take [reasonable] precautions" and "that a seaman does not assume the risk of injury or illness from even obvious dangers or conditions if the cause of the injury is the ship's negligence, the failure to provide him with a safe place to work, or the failure to provide a safe and seaworthy vessel."

Past judicial decisions dealing with individual instructions claimed to violate <u>Socony-Vacuum</u> are not much help because each package tends to be different. However, we have upheld instructions much closer to the line than this one, <u>Myers</u> v. <u>Isthmian Lines, Inc.</u>, 282 F.2d 28, 31 (1st Cir. 1960), <u>cert. denied</u>, 365 U.S. 804 (1961), and Hopkins offers no precedent that condemns a combination of warning and qualification anything like the one in this case. That said, there is certainly an argument for a good set of pattern instructions in this area.

Hopkins' other claims of error can be dealt with more swiftly. He objects because at two other points in the instructions, the district court twice referred to the need to show that defendant's negligence was "the" proximate cause of Hopkin's injury. True, it would be enough to show that such negligence was "a" proximate cause; the wrongful act or condition need not be sole and exclusive cause. <u>Rogers</u> v. <u>Missouri Pac. R.R.</u>, 352 U.S. 500, 506 (1957). But the district court gave an emphatic instruction to this effect at the outset (emphasis added):

Under the law the defendant's negligence is a legal cause of an injury or damage if that negligence played <u>any part, no matter how small</u>, in bringing about or causing the injury or damage. Therefore, even if the defendant's negligence operated <u>in combination with the act of another or in combination with some other cause</u>, the defendant's negligence is a legal cause of the plaintiffs injury or damage if it played any part no matter how small in bringing about or causing the injury or damage.

There were several other briefer statements to the same effect.

Although the slip-of-the-tongue references to "the" proximate cause are unfortunate, the test of jury instructions is not abstract perfection. Instead, we consider jury instructions as a whole to determine whether they correctly summarize the relevant law. <u>Kelley</u> v. <u>Airborne Freight Corp.</u>, 140 F.3d 335, 349-50 (1st Cir.), <u>cert. denied</u>, 525 U.S. 932 (1998). No harm was done by the two passing uses of the definite article, juxtaposed with the very clear and

explicit statement just quoted advising the jury that negligence playing "any part, no matter how small" was enough.

Finally, Hopkins says that Jordan Marine's expert was not qualified. The expert was a graduate of the Coast Guard Academy who had served as an inspector of ships for the Coast Guard followed by years of consulting work in ship inspection and investigating maritime accidents. In no way did the district court abuse its discretion in permitting this expert to testify. See Diefenbach v. Sheridan Transp., 229 F.3d 27, 30-31 (1st Cir. 2000).

Affirmed.

1. Of the District of New Hampshire, sitting by designation.

2. Hopkins' counsel did object to the instructions after they were given on the ground that the Supreme Court had barred assumption of the risk as a defense, although counsel seemingly pointed to two other references in the charge. The original charging conference was not transcribed, but the judge's response to the post-charge objection indicates that the same objection had been made and rejected at the charge conference.

3. This version of contributory negligence is more accurately described as comparative negligence, see Prosser & Keeton on Torts § 67, and the case law and model jury instructions cited below sometimes refer to it as such.