Case 1:04-cv-12011-MLW    Document 61-3    Filed 10/06/2006    Page 1 of 6

[NOT FOR PUBLICATION--NOT TO BE CITED AS PRECEDENT]

# United States Court of Appeals
## For the First Circuit

No. 00-2098

ANA MATOS, INDIVIDUALLY AND AS
PERSONAL REPRESENTATIVE OF THE
ESTATE OF JOAQUIM MATOS,

Plaintiff, Appellant,

v.

SILVA FISHING CORPORATION,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nancy Gertner, U.S. District Judge]

Before

Boudin, Chief Judge,

Cyr, Senior Circuit Judge,

and Lynch, Circuit Judge.

David F. Anderson with whom Carolyn M. Latti, David J. Berg
and Latti & Anderson LLP were on brief for appellant.
Thomas J. Muzyka with whom Arthur P. Skarmeas and Clinton
& Muzyka, P.C. were on brief for appellee.

October 30, 2001

Per Curiam.   Ana Matos brought this action to recover
for the death of her husband, Joaquim Matos, who drowned after
falling off the F/V Lutador, a commercial fishing vessel owned
by defendant Silva Fishing Corporation.   Joaquim Matos was a
mate aboard the vessel.   The captain was Jose Silva, president
of Silva Fishing.

Early on the morning of October 10, 1997, Joaquim Matos
noticed that some wires attached to the vessel's trawl doors
were tangled.   The doors, located in the aft of the vessel, are
used to keep the fishing net open while it is dragged through
the water.   Matos informed Silva, who took over the controls of
the vessel and a winch used to operate the doors.   With the
assistance of Silva and two other crewmembers, Matos was able to
untangle the wires, but the starboard-side door got caught on a
chain.   Matos signaled Silva to raise and lower the doors with
the winch, but this effort did not free the door from the chain.

On his own initiative, Matos placed one foot on the
railing of the vessel and one foot on the starboard side door,
which was partially submerged in the water.   Using a hammer he
pounded the chain trying to loosen it from the door.   Silva, who

-2-

was at the front of the vessel at the time, yelled at Matos to get off the door and back into the boat because he feared Matos might get hurt, but Matos either did not hear him or simply ignored the order. As Matos was hammering, the door suddenly dropped and he fell into the water.

A crewmember threw an unattached life ring into the water, but it landed 20 feet from Matos and Matos did not try to swim toward it. Silva turned the vessel toward Matos, coming within four feet of him. A deckhand threw Matos another life ring which landed one or two feet from him, but again Matos was unresponsive. Before the deckhand could jump into the water, Matos submerged and disappeared, only seven minutes after he fell off the vessel.

Ana Matos contended at trial that Silva Fishing was negligent under the Jones Act, 46 U.S.C. § 688 (1994), in failing to provide her husband a safe workplace and in failing to conduct a proper rescue operation once he fell overboard and that the vessel was unseaworthy in several respects under general maritime law. In a special verdict, the jury found inter alia that the defendant, Silva Fishing, was not negligent, and that, although the F/V Lutador was unseaworthy, its unseaworthiness was not a proximate cause of Matos' death. It

-3-

also found that Matos' own negligence was a 95 percent cause of
his death.

On appeal, Matos challenges the jury instructions that
were given and the qualifications of Silva Fishing's expert. We
reject her claims for reasons explained below. Because most of
Ana Matos' arguments parallel those that we recently considered
and rejected in Hopkins v. Jordan Marine, Inc., 1st Cir., No. 01-
1027, Oct. 29, 2001, we rely primarily upon our discussion in
that case.      Matos first argues that the district court
effectively allowed assumption of the risk as a defense when it
told the jury that "[a] seaman, when he enters upon his calling,
must assume the unavoidable risks of his occupation" and may not
recover for "the normal hazards of his business." It is true
that assumption of the risk is not a bar to recovery, either for
unseaworthiness or under the Jones Act, see Hopkins, slip op. at
4; but the now disgarded doctrine does not forbid use of the
words "assume" or "risk."

Rather, as Hopkins explains, assumption of the risk was
a doctrine that precluded a plaintiff from recovering, even
where the owner was shown to be negligent or the ship
unseaworthy, because the plaintiff had known of the action or
condition and "assumed the risk" by continuing to work. No such
instruction was given here. The complained of instruction, read

-4-

Case 1:04-cv-12011-MLW     Document 61-3     Filed 10/06/2006     Page 5 of 6

in full, merely said that there was no liability if no one was at fault and the accident was simply one of those normal incidents of life at sea.[1]

Matos also complains that the instruction on contributory negligence contained error and that the charge on negligence did not sufficiently stress the extent of the obligation. But the charge on negligence gave the substance of what Matos says should have been included. And given the jury finding that unseaworthiness did not cause the harm (which disposed of one claim) and the finding that there was no negligence (which disposed of the other), the 95 percent allocation of blame to Joaquim Matos was beside the point.

In a final criticism of the instructions, Ana Matos says that the court erred in telling the jury that an act or omission is the cause of an injury or death if the harms would not have happened "but for" the act or omission. The argument is that the jury may have been misled into thinking, wrongly, see Hopkins, slip op. at 7, that the defendant's act or omission had to be the sole cause. However, the district court twice

---

[1]The instruction reads (emphasis added): "A seaman, when he enters upon his calling, must assume the unavoidable risks of his occupation, as all persons must, and no person may recover for injuries resulting from unavoidable risks. If the seaman is injured or killed without the fault of anyone else, but part of the normal hazards of his business, he may not recover."

-5-

told the jury explicitly that it was enough if the defendant's negligence (in one case) or act or omission (in the other) "played any part, no matter how small," in bringing about the injury.[2]

Finally, Ana Matos says that the district judge abused her discretion in allowing Silva Fishing's expert to testify. The main objection is that although a former Coast Guard officer and long a marine surveyor and accident investigator, the expert had never served in a commercial fishing operation. This is not only the same objection, but also the same expert who testified in Hopkins; and our decision in Hopkins applies equally in this case.

Affirmed.

---

[2]In its instruction, the district court told the jury that proximate cause existed if an act or omission "played any part, no matter how small, in bringing about or actually causing the injury."