Page 25

1  Q  The next document here is a copy of Plaintiff's
2     Opposition to Defendant's Motion for Summary
3     Judgment, two-page document.
4  A  Yes.
5  Q  Next document is Plaintiff's Memorandum in Support
6     of Plaintiff's Opposition blah, blah, blah, blah,
7     blah, seven-page document?
8  A  Yes.
9        MR. REGAN: I think the blah, blah, blah
10        is somewhat important. It's Plaintiff's Crossmotion
11        for Summary Judgement.
12 Q  I'll be more clear. Plaintiff's Memorandum in
13    Support of Plaintiff's Opposition to Defendant's
14    Motion For Summary Judgment and Crossmotion for
15    Partial Summary Judgment.
16        Next we have the deposition of Jose
17    Abreu, A B R E U?
18 A  Yes.
19 Q  And it starts on page one and ends on page 24. It
20    appears to be the entire transcript.
21 A  Yes.
22 Q  Next document would be the deposition of Joao Cura
23    starting on page one and ending on page 42, again
24    appears to be the entire transcript.

Page 26

1  A  Yes.
2  Q  And the next is the deposition of Carlos Aguiar
3     starting on page one and ending on page 110, and
4     appears to be the entire transcript. For the record
5     I did say 110 but actually it's 111 but appears to
6     be the entire transcript.
7        The next document we have is a letter on
8     your Marine Safety Consultants' letterhead dated
9     September 29, 2006. Says "Dear Mr. Regan, Attached
10    find my original affidavit that I have faxed to you
11    earlier today. Should you have any questions or
12    assistance, please don't hesitate to call," signed
13    by yourself. Correct?
14 A  Yes.
15 Q  Attached to that is a two-page affidavit with 11
16    line items.
17 A  Yes.
18 Q  That is signed the 28th of September?
19 A  Yes.
20 Q  Next is a case entitled Lisa and Tina Vs. Fournier
21    Marine Corporation. Do you see that?
22        MR. REGAN: Not Lisa and Tina, Richard
23    Lisa and Tina Lisa.
24 Q  Vs. Fournier Marine Corporation.

Page 27

1  A  Yes.
2  Q  Was this given to you, or was this something that
3     you had?
4  A  No, it was given to me.
5  Q  Do you know who gave it to you?
6  A  Yes.
7  Q  Who was it?
8  A  Attorney Regan.
9  Q  The next document we have is an affidavit of David
10    DuBois. This is an affidavit which is dated 22nd of
11    February 2006?
12 A  Yes.
13 Q  That has 14 items, paragraphs in it?
14 A  Yes.
15 Q  Signed by yourself?
16 A  Yes.
17 Q  The next document?
18        MR. REGAN: Same thing, just a photocopy.
19 Q  The one I just referred to appears to be the
20    original, correct?
21 A  I'm not sure if it's an original or a good copy of
22    the original. I would say that based on the way
23    this signature reads, this is a photocopy of the
24    original, and the original would have been mailed to

Page 28

1     Mr. Regan with that FedEx receipt that you referred
2     to in the beginning of the file. So the original is
3     FedExed to Mr. Regan.
4  Q  Affidavit from David C. DuBois, do you see that?
5  A  Yes.
6  Q  Appears to be a fax at the top?
7  A  Yes.
8  Q  Where did that fax come from?
9  A  Mr. Regan's office.
10 Q  After they faxed to you, correct?
11 A  They -- I drafted it, they typed it in a format for
12    the court and faxed it to me for signature, and I
13    signed it and mailed in the original.
14 Q  How did you draft it?
15 A  My secretary would have typed it.
16 Q  You wrote the words and then gave, somehow gave the
17    words to Mr. Regan's office?
18 A  Yes, and they put it in the format necessary for an
19    affidavit.
20 Q  When you drafted it, do you have a memory of
21    drafting it?
22 A  Yes.
23 Q  When you say "draft," you could mean handwrite on a
24    pad of paper, you could mean talking to a

7 (Pages 25 to 28)

Hennessey Corp d/b/a Robert H. Lange Co.
617-523-1874

e87e82fe-f5f1-4add-90ed-076102f80e35

Page 29

1  Dictaphone, you could mean talking to your secretary
2  while you are on the phone and she is at the office.
3  It could mean a lot of things. What is your memory
4  as to how this affidavit was drafted?
5  A  I think I handwrote a summary of my findings and my
6  opinions and sent it to Mr. Regan, and then his
7  office put it in the form of an affidavit and sent
8  it back to me for review to make sure that is what I
9  said, and then I signed it and sent it back to him.
10     MR. ANDERSON: Why don't we mark this.
11  I'm going to pull this out of this and we're going
12  to mark this as Exhibit No. 2.
13  Q  Exhibit No. 2 is a one, two, three, four, five,
14  Exhibit 2 is a five-page document, is that correct?
15  A  Yes.
16     [Exhibit 2 marked for identification]
17  Q  And that was faxed to Marine Safety Consultants by
18  Regan & Kiely at some point this winter, is that
19  correct?
20  A  Yes.
21  Q  And it says 2-12 of 2006. Does that sound about
22  right?
23  A  2-21.
24  Q  I'm reading upside down.

Page 30

1  A  Yes.
2  Q  Does that sound about right?
3  A  Yes.
4  Q  The text in Exhibit 2 was provided to Regan & Kiely,
5  typed up in affidavit form, provided by you,
6  correct?
7  A  The contents of the affidavit to the extent that
8  it's my work product other than in the format and
9  the ending pains and perjury paragraph would have
10  been my comments provided to Mr. Regan, and they
11  drafted it as I said in the appropriate format and
12  sent it back to me.
13  Q  Exhibit 2 on the last page of Exhibit 2, that
14  signature was written after the fax was received?
15  A  Yes.
16  Q  So that's pen. The rest of Exhibit 2 came out of
17  the fax machine basically?
18  A  That's what it looks like.
19  Q  Is that consistent with your memory?
20  A  Yes, to the extent that that is how I recall this
21  transpire, yes.
22  Q  At some point -- And there was a concern over
23  getting it done within a certain court-ordered
24  deadline, do you recall that in February?

Page 31

1  A  I don't remember whether it was a court-ordered
2  deadline or a deadline that Mr. Regan placed on me.
3  I just know that we were working on it and I sent it
4  and signed it, and that's the date I sent it.
5  Whether there was a deadline, I don't remember.
6  Q  At some point after you signed Exhibit 2, did you
7  receive a hard copy in the mail as opposed to a
8  faxed copy?
9  A  I don't think so.
10     MR. ANDERSON: Why don't we mark the next
11  document as Exhibit No. 3.
12     [Exhibit 3 marked for identification]
13  Q  Exhibit 3 is a four-page document also entitled
14  Affidavit of David DuBois?
15  A  Yes.
16  Q  That appears not to be a fax. Does that appear to
17  you?
18  A  This is a photocopy of the original document that I
19  mailed -- FedExed, I'm sorry. FedExed on the date.
20  It's a photocopy of an original.
21  Q  So on 2-21 of '06 you FedExed a package to Julie
22  Easter. She is an attorney at Regan & Kiely,
23  correct?
24  A  I don't know if she is an attorney or paralegal.

Page 32

1  Q  Somebody from Regan & Kiely?
2  A  Yes.
3  Q  And you believe what was FedExed to them on 2-21 of
4  '06 was an original affidavit of David C. DuBois
5  which was on plain paper, not run through a fax
6  machine, and signed by yourself of which Exhibit 3
7  is a copy?
8  A  I think, I'm not sure because this FedEx receipt is
9  not affixed to that. But my recollection of that
10  period of time was I FedExed back an original
11  document. Whether it's an original of this one here
12  with the fax cover sheet, not the fax cover sheet
13  but the fax notations, I'm not sure. I don't
14  recall. I'd have to look and see which one we
15  received to be able to say that. I don't know.
16  Q  I'm going to keep going through the file and set
17  these two aside for the moment. That's the end of
18  section of the file labeled "correspondence"?
19  A  That doesn't mean anything, it's just an old file
20  folder that got re-used.
21  Q  The next document in here is another document that
22  says Affidavit of David DuBois.
23  A  Yes.
24  Q  Is this a copy or original, if you know?

Hennessey Corp d/b/a Robert H. Lange Co.
617-523-1874

e87e82fe-f5f1-4add-90ed-076102f80e35

Page 33

1  A  That appears to be a photocopy of this one here that
2     you marked as Exhibit 2. I'm sorry, it's a
3     photocopy of the one that you marked as Exhibit 3, I
4     believe. Maybe I got mix-and-match papers, I don't
5     know.
6  Q  Exhibit 2 has got an original signature on it,
7     correct?
8  A  Yes, but there is no date.
9  Q  Exhibit 3 appears to have a photocopied signature,
10    correct?
11 A  Yes.
12 Q  The same is true with the document in your hand,
13    correct?
14 A  Yes.
15 Q  Do you know how, why this document that we'll mark
16    as Exhibit 4, do you know why that is in the file?
17 A  Other than it's a photocopy of one that I was using
18    just as a work document, there would be no other
19    reasons. Sometimes multiple copies get made and
20    marked up. Sometimes there is a reason for it,
21    sometimes there is not. I don't recall why I got a
22    copy of that.
23    [Exhibit 4 marked for identification]
24 Q  On Exhibit 4 there is highlighted in yellow on

Page 34

1     paragraph 5 there is yellow highlight. Do you know
2     who wrote that?
3  A  Who put those yellow highlights?
4  Q  Yes.
5  A  I did.
6  Q  Do you know when you did that?
7  A  Last night.
8  Q  Do you know why you did that?
9  A  Yes, in order to prepare somewhat for today, I was
10    reviewing my affidavit and reviewing the information
11    that, other documents that I had in my file to make
12    sure I had everything and hadn't misplaced anything.
13 Q  On the third page of the affidavit in paragraph 9,
14    first line, is that writing that is there, is that,
15    it was written last night, or is that a copy of
16    something, notes?
17 A  I think it's a copy of a pen and ink change to the
18    affidavit based on a typographical error, and that's
19    my handwriting.
20 Q  It says "whale carcass." Do you know who originally
21    put that in the affidavit?
22 A  May have been my secretary or in my notes, I don't
23    recall. I just know when I reread it, I said that
24    is not what I said or not what I meant to say and it

Page 35

1     may have been translated wrong, so I made a pen and
2     ink change.
3  Q  Next document is a transcribed statement of Carlos
4     Aguiar.
5  A  Yes.
6  Q  It's one, two, three, four, five, six.
7  A  Yes.
8  Q  How did you get this transcribed statement of Carlos
9     Aguiar?
10 A  How did I get it?
11 Q  Yes.
12 A  I don't recall how I got this particular document.
13    I don't recall if it was photocopied by my
14    secretary. I don't recall if it was mailed to me.
15    I know it's something that I reviewed back in
16    February in preparation for the, when I prepared my
17    affidavit.
18 Q  Do you have any memory of pulling it out of the
19    investigative file?
20 A  No, I don't.
21 Q  Next document in your file is a document entitled
22    Affidavit of Carlos Aguiar.
23 A  Yes.
24 Q  It's a one-, two-, three-, four-, five-, six-page

Page 36

1     document?
2  A  Yes.
3  Q  And there is yellow highlight on it in various
4     places?
5  A  Yes.
6  Q  Do you know when that yellow highlight was applied?
7  A  Yes.
8  Q  When?
9  A  February.
10 Q  It appears it was faxed to you from the top?
11 A  Yes.
12 Q  The date in which it indicates it was faxed was
13    February 14 of 2006?
14 A  Yes.
15 Q  Do you know who faxed it to you?
16 A  Again this looks like Mr. Regan's office fax number.
17 Q  Next document in this pile is Plaintiff's Statements
18    of Undisputed Material Facts blah, blah, blah, blah,
19    blah. It's a one-, two-, three-, four-, five-, six-
20    seven-, eight-page document?
21 A  Yes.
22 Q  And again that appears to be a document which was
23    faxed to your office?
24 A  Yes.

9 (Pages 33 to 36)

Hennessey Corp d/b/a Robert H. Lange Co.
617-523-1874

e87e82fe-f5f1-4add-90ed-076102f80e35