Page 169

1  correct? You are assuming the door was swinging?
2  A  The door is swinging because the boat is moving.
3     It's always movement. There is always movement.
4     It's never static unless you are ashore on drydock
5     without any kind of sea running at all. If you are
6     on the ocean, it's moving.
7  Q  You are assuming that the door was moving more than
8     the amount of slack in the chain?
9  A  I'm assuming that that happened because it came
10    taught. Now if there was more slack in the chain or
11    the door had not moved or the boat was not rolling,
12    then the chain wouldn't have come taught. Something
13    had to make the chain come taught.
14 Q  One of the things would have been that the wire has
15    let out?
16 A  The door moved, one of the things could be, would
17    have been if the door moved, the tautness would have
18    occurred. So the door moved, it's my opinion that
19    the door moved because of the roll of the seaway.
20 Q  I understand that. You also agree that the door
21    could have moved if wire was let out from the main
22    winch?
23 A  If wire was let out from the main winch, the door
24    would have moved; not could have moved, would have

Page 170

1     moved.
2  Q  Are there any other ways in which that door could
3     move such that it could take, make the safety chain
4     taught other than wire coming out of the main winch
5     or the boat rolling and the door swinging away?
6  A  No.
7        MR. ANDERSON: I have nothing further.
8        MR. REGAN: Nothing by me.
9        MR. ANDERSON: Oh, wait. Before we go
10    off, can you look for the draft affidavit; and if
11    you have them, I'll have it marked it and if not --
12    And we'll get out of here.
13       MR. REGAN: This is all of -- How about
14    he keeps all of the marked exhibits. 7 might have
15    been yours which is the one from the court.
16       MR. ANDERSON: Can you run these through
17    the copy machine?
18       MR. REGAN: I'm not going to do that.
19       MR. ANDERSON: I want, these are the
20    things that I want.
21       MR. REGAN: I understand. I'll get them
22    to you tomorrow.
23       MR. ANDERSON: You are going to keep
24    them?

Page 171

1        MR. REGAN: I don't have a secretary.
2  I'm not going to stand and copy all this myself.
3        MR. ANDERSON: You are going to keep the
4  marked ones?
5        MR. REGAN: Yes, I suggest we keep it in
6  his file. Most of it is his.
7        [Telephone interruption]
8        MR. REGAN: As far as I remember, David,
9  I think every single one of these documents that you
10 have marked is from his file with the exception of
11 number 7 which is the one that was actually filed in
12 court. I'm just suggesting why doesn't he keep
13 that, also, so all the exhibits are together. I
14 will be happy to make you copies.
15       MR. ANDERSON: Why don't you keep them?
16       MR. REGAN: Me instead of him?
17       MR. ANDERSON: If he is going to take
18 them with him now, then give me copies now. You
19 keep copies of the exhibits, okay? I want to get
20 those tomorrow morning because if we go past
21 tomorrow, I'll end up the night before --
22       MR. REGAN: What is 4? This is the last
23 page of 3.
24       THE WITNESS: This is 4, 5, 6, 7, 8.

Page 172

1        MR. ANDERSON: Are we in agreement that
2  you will retain all the copies of all the exhibits,
3  correct?
4        MR. REGAN: Yes.
5        MR. ANDERSON: And you will make me
6  copies tomorrow morning?
7        MR. REGAN: It's almost six o'clock at
8  night and I have a deposition at nine o'clock in the
9  morning. I don't think physically I will have an
10 ability to get you copies.
11       MR. ANDERSON: You will get me copies
12 Wednesday at the pre-trial?
13       MR. REGAN: I should be able to do that.
14       MR. ANDERSON: I don't want a situation
15 where they leave your office and --
16       MR. REGAN: I think I will hang on to his
17 file.
18       MR. ANDERSON: Off the record.
19       [Whereupon the deposition was
20           concluded at 5:40 p.m.]
21
22       * * * *
23
24

43 (Pages 169 to 172)

Page 173

```
 1        WITNESS CERTIFICATE
 2        I, DAVID DUBOIS, certify that I have read the
    foregoing transcript of my testimony taken on October
 3  2, 2006, and certify that, to the best of my knowledge,
    said transcript is true and accurate (with the
 4  exception of the following corrections):
 5  Page    Line    Corrections
 6  _____
 7  _____
 8  _____
 9  _____
10  _____
11  _____
12  _____
13  _____
14  _____
15  _____
16  _____
17  _____
18  _____
19  _____
20  _____
21  _____
22  _____    _____
       DAVID DUBOIS               Date
23
24  cmw
```

Page 174

```
 1  COMMONWEALTH OF MASSACHUSETTS)
                                 )
 2  COUNTY OF SUFFOLK            )
 3
 4        I, Carole M. Wallace, Certified Shorthand
 5  Reporter within and for the Commonwealth of
 6  Massachusetts, do hereby certify that I took the
 7  deposition of DAVID DUBOIS at the offices of Regan &
 8  Kiely, LLP, 88 Black Falcon Avenue, Boston,
 9  Massachusetts  02210, on Monday, October 2, 2006,
10  commencing at 1:26 p.m.
11        I further certify that said witness was by me
12  duly sworn to testify to the truth, the whole truth,
13  and nothing but the truth, and that the foregoing
14  testimony was taken by me stenographically and is, to
15  the best of my skill and ability, a true record of the
16  testimony of the witness.
17        I further certify that I am not related to any
18  of the parties hereto or their counsel, and that I am
19  in no way interested in the outcome of said cause.
20        Dated this 6th  day of October 2006.
21
22
                    _____
23                  Carole M. Wallace
                    Certified Shorthand Reporter
24
```